IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00319-WDM

DALE DUANE COX,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

    Plaintiff Dale Duane Cox (Cox) appeals the denial of his application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security (Commissioner). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

Background

    Cox was born September 13, 1963. Administrative Record at 41. He has a high school education and worked as an auto mechanic and as a crusher supervisor/mechanic in construction. *Id.* at 50, 62.

    Cox asserts he became disabled around May 15, 2001, after he suffered a groin injury that turned out to be a hernia. *Id.* at 58. He had a surgery to repair the hernia on August 1, 2001. *Id.* at 159. In the months following the surgery, Cox reported shooting

pains in the groin area and was treated with non-steroidal injections.  *Id.* at 93-94.  An exploratory surgery was performed in November 2001; after a few weeks, Cox still complained of constant and severe pain.  *Id.* at 89-91, 154-55.  He began taking Neurontin, Vioxx, and Oxycodone.  *Id.* at 89.  Another exploratory surgery was performed in February 2002, in which the surgeon noted inflamed tissue around the mesh graft at the hernia site; the Prolene mesh graft was replaced with a Gore-Tex mesh.  *Id.* at 134.  Cox reported some pain relief and returned to work but then reinjured the area in June 2002.  *Id.* at 83-84.

When the pain persisted, Cox made several visits to his surgeon and to pain specialists in August and October 2002.  *Id.* at 83, 354-358.  He was treated with nerve blocks but without effect.  *Id.* at 357.  Another surgery was performed in October 2002 to repair possible problems with the mesh graft, but none were detected during the surgery.  *Id.* at 116.  In November 2002, Cox reported continued severe pain and was prescribed Duragesic patches and Percocet.  *Id.* at 82.  In December 2002, he was treated by a pain specialist, Dr. Daniel R. Marsh, and reported continued chronic pain with episodes of severe shooting pain several times a day, which caused him to collapse.  *Id.* at 181-182.  Cox saw Dr. Marsh in January, February and March 2003; Dr. Marsh referred Cox to a pain clinic and prescribed Methadone and Flexeril.  *Id.* at 173-78.  Dr. Marsh diagnosed Cox with post-herniorrhaphy syndrome in May 2003 and recommended a spinal cord stimulator.  *Id.* at 172.

In June 2003, Cox was evaluated by Dr. Bradley D. Vilims for consideration of a spinal cord stimulator.  *Id.* at 184.  Dr. Vilims first performed nerve root blocks, which

were temporarily successful in abating Cox's pain. *Id.* at 374-77. Dr. Vilims recommended permanent insertion of a spinal cord stimulator. *Id.* at 374.

In July 2003, Dr. Ketelhohn, a DDS physician, reviewed Cox's records and opined that he could lift and carry 10-20 pounds, could stand and walk two to three hours, sit for six hours, and occasionally climb and frequently balance, stoop, kneel, crouch, and crawl. *Id.* at 186-93.

The spinal cord stimulator was inserted in October 2003. *Id.* at 330-34. It was apparently somewhat successful in controlling Cox's chronic pain but not the episodes of sharp pain. *Id.* at 333-34. In January 2004, Cox returned to Dr. Vilims complaining of worsened symptoms; Dr. Vilims recommended repositioning some of the leads in the stimulator. *Id.* at 299. The revision procedure was performed in March 2004. *Id.* at 350.

In June 2004, Dr. Marsh evaluated Cox's functional abilities. *Id.* at 378-81. He opined that Cox was not malingering. *Id.* He further opined that Cox was suffering from reactive depression to the chronic pain, had concentration and memory problems, could walk for a block, sit for one hour, stand for 20 minutes, could sit, stand, or walk less than two hours a day, and had numerous postural and reaching limitations because of the spinal cord stimulator. *Id.* He also noted that Cox would need unscheduled breaks and could not lift any weight. *Id.*

Administrative Proceedings

Cox's claim was disapproved on July 3, 2003 based on the determination that he could do work other than his previous work. *Id.* at 35-38. He filed a timely appeal and

3

requested hearing before an Administrative Law Judge (ALJ).  *Id.* at 28.

The hearing was held on June 21, 2004.  *Id.* at 18.  Cox testified that he has a constant pain and a severe pain, like being kicked in the groin area, which makes him dizzy and sick.  *Id.* at 388.  The severe pain hits several times a day and causes him to double over, and sometimes to pass out, and makes him feel nauseated and weak.  *Id.* at 389.  He explained that the spinal cord stimulator, if shaken by some activity, causes his knees to shake and can send the electrical impulses to other places in his body.  *Id.*  He does not drive because it could be hazardous if an episode hit while he was driving.  *Id.* at 390.  He explained that in a usual day, he gets on the couch, watches television, sits on the porch, and sits around the house, sometimes reading.  *Id.*  He does not sleep well because he often wakes up when he rolls over.  *Id.* at 390.  He still takes his prescribed medication.  *Id.* at 391.  He can lift a gallon of milk but no more.  *Id.*  He testified that he can stand for about 15 minutes and walk about a block.  *Id.*  He can sit but has to change position frequently.  *Id.* at 391-92.  He testified that he cannot push, pull, or do much climbing because of the spinal cord stimulator.  *Id.* at 392.  He is not seeing a psychiatrist.  *Id.* at 394.

The vocational expert was asked a hypothetical question concerning an individual with Cox's age, education, and background, limited to an exertional level of sedentary but with limitations of no squatting, crawling, climbing, foot or leg controls, and only occasional pushing and pulling and no over chest level work.  *Id.* at 396.  She testified that a person with these limitations could not do Cox's past relevant work but that other jobs existed that were compatible with these limitations.  *Id.*  However, she

testified that if the same individual had to sit or lie down or be off task on an unpredicted basis and time period due to pain, no such jobs existed. *Id.* at 397.

The ALJ issued a decision on April 6, 2005. *Id.* at 12-17. The ALJ made the following findings:

1. Cox had not engaged in substantial gainful activity since the onset of his disability. *Id.* at 16.

2. His post herniorrhaphy syndrome and related groin pain are severe but do not meet or equal a listed impairment. *Id.*

3. In determining Cox's residual functional capacity, the ALJ found Cox's testimony of disabling pain not credible. *Id.* at 14. As grounds he noted that although the evidence demonstrates the existence of an impairment that could cause the pain reported by Cox, it does not support a degree of pain and limitation precluding all work. *Id.* Specifically, the ALJ noted that Cox performs some household chores, including taking out the trash, goes shopping with his family, cares for his own personal needs, and helps his children with homework, and reportedly enjoys fishing, building models, and reading. *Id.*

4. The ALJ found that Cox could do a significant range of sedentary work, without the need for squatting, climbing, crawling, or the operation of leg or foot controls. He can lift and/or carry up to 10 pounds occasionally and lesser weights more frequently, can stand or walk at least two hours a day and sit for six, with normal breaks, and occasionally push or pull. *Id.* In establishing this RFC, the ALJ rejected the opinions of Dr. Marsh, a treating physician, who opined that Cox was significantly more restricted. Specifically, the ALJ found that the record did not support Dr. Marsh's complete restrictions on lifting or opinion that Cox could not could stand for more than 20 minutes at a time or sit for more than one hour at a time. *Id.*

5. Cox would be unable to perform his past relevant work but could perform other jobs that exist in significant numbers in the national economy, according to the testimony of the vocational expert. *Id.* at 15-16. Accordingly, the ALJ found that Cox was not disabled. *Id.* at 16.

The Appeals Council denied a request for review, rendering the ALJ's

5

determination final for purposes of this appeal.  *Id.* at 4-6.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Id.* (citations omitted).  The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal.  *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

Cox makes four arguments on appeal: (1) the ALJ failed to properly evaluate Cox's credibility; (2) the ALJ improperly rejected Dr. Marsh's opinion; (3) the ALJ erred in determining Cox's residual functional capacity; and (4) the hypothetical questions to the vocational expert did not contain all of Cox's limitations.  I address these arguments in turn.

### 1. Failure to properly evaluate credibility

Cox argues that the ALJ failed to properly evaluate his credibility in rejecting his testimony of limited functional capacity.  I agree.  The ALJ appears to have relied solely on the activities identified by Cox in his daily activities questionnaire, but did not develop this evidence through testimony.  Accordingly, there is no evidence on the

6

record as to how much Cox engages in any specific activity or how it bears on his ability to work an eight hour day.  Moreover, Cox filled out the daily activities questionnaire before the implant of the spinal cord stimulator, which has clearly impacted his activities and abilities.  Further, although the ALJ recited the proper factors to consider in determining a claimant's credibility, the only specific basis he gave for his negative credibility determination were the daily activities.  I conclude the ALJ's credibility determination was in error.

In general, credibility determinations are the province of the fact finder, but nonetheless should be closely and affirmatively linked to substantial evidence.  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (as amended) (citation omitted).  The Social Security rulings direct an ALJ to give reasons for a credibility finding that are supported by the record and are sufficiently specific to inform reviewers of the weight given to a claimant's statements and the reason for that weight.  *See* Social Security Ruling 96-7p.

The factors to be considered in evaluating subjective allegations of pain, "an evaluation that ultimately and necessarily turns on credibility," include: "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling."  *White,* 287 F.3d at 909 and n.3 (10th Cir. 2001) (as amended) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Here, there is certainly objective medical evidence establishing a pain producing impairment and a nexus

between the impairment and Cox's allegations of pain.

In determining the credibility of a claimant's testimony regarding pain, the ALJ should consider such factors as: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing Soc. Sec. Rul. 96-7p).

The only grounds the ALJ gave for rejecting Cox's allegations of pain preventing him from working was that Cox engages in some household and leisure activities. However, without more evidence as to the nature, duration, and frequency of these activities, this does not support the ALJ's credibility finding or RFC determination. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (claimant's ability to do daily activities, standing alone, does not establish that the claimant can engage in light or sedentary work  but considered in the context of the record may support such a

finding).  In contrast, there is significant evidence that Cox suffers chronic and severe pain, including consistent complaints to medical sources, positive credibility evaluations by providers (and even the DDS physician), powerful pain medication, numerous attempts at pain control including a number of surgeries and ultimately the insertion of a spinal cord stimulator, which carries its own side effects.  In addition, it is not clear the degree to which the ALJ found credible Cox's reports of debilitating sharp pain occurring several times a day or how the ALJ factored it into the RFC or otherwise.

Therefore, I find the ALJ failed to follow the requirements of SSR-96-7p and the ALJ's determination of credibility is unsupported by substantial evidence in the record.

2.      Failure to properly consider Dr. Marsh's RFC

Cox next argues that the ALJ erred by giving Dr. Marsh's RFC "little weight." The ALJ found that there was no evidence to support several of the limitations identified by Dr. Marsh in his assessment of Cox's abilities.  In the alternative, Cox argues that the ALJ should have further developed the record as to the medical findings underlying Dr. Marsh's opinion.

The opinion of a treating source is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188).  If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in

9

20 C.F.R. § 404.1527 and 416.927." *Id.* at 1300 (quoting SSR 96-2p). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

If the ALJ rejects the opinion of a treating medical source completely, "he must then give 'specific legitimate reasons' for doing so." *Watkins,* 350 F.3d at 1301. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted).

The only factor the ALJ appears to have applied is the consistency between Dr. Marsh's opinion and the record as a whole. The ALJ noted the alleged inconsistency between Dr. Marsh's opinion and Cox's statements; however, in light of my

determination that the ALJ improperly assessed Cox's credibility, this does not provide grounds for the ALJ's conclusion. In addition, some of the evidence that the ALJ relied on to find inconsistency was developed before the insertion of the spinal cord stimulator, such as the opinions of the non-examining DDS physician. Moreover, several aspects of Dr. Marsh's opinion are not at all inconsistent with the record, such as his limitations on Cox's ability to reach, but the ALJ did not include these limitations in his RFC.

The ALJ did not consider several of the *Watkins v. Barnhart* factors, including the length of the treatment relationship, the nature of treatment, examinations performed, other evidence supporting the opinion, and Dr. Marsh's specialization (he is a pain and rehabilitation specialist). Also, the ALJ did not address several of Dr. Marsh's opinions, even to discount them. For example, Dr. Marsh opined that the pain would cause Cox to have constant concentration problems, would require him to take unscheduled breaks and to have to shift between sitting/standing/walking at will. The ALJ does not discuss these opinions (which are supported by other evidence in the record) but does not include them in the RFC. In fact, the vocational expert testified that no jobs would be available for a person with Cox's RFC who had to sit or lie down or take unscheduled breaks of indefinite duration at will due to pain.

The Commissioner presented supplemental authority at oral argument and there argued that the Tenth Circuit does not require an ALJ to "ritualistically" apply every factor in determining the weight to give the factors identified in *Watkins v. Barnhart.* However, the cases cited by the Commissioner are unpublished and the analyses

therein do not indicate that the Tenth Circuit has altered the controlling standards for evaluation of a treating physician's opinion. My reading of published Tenth Circuit authority persuades me that the *Watkins* factors must be addressed by the ALJ so that I may "meaningfully review" his findings. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Because the ALJ's decision does not provide sufficient indication that the ALJ properly considered the *Watkins* factors, I conclude remand is appropriate to correct these omissions.

3.  The ALJ's RFC determination

Cox also objected to the ALJ's findings underlying the RFC. He argues that it is not clear whether the ALJ found credible his reports that he experiences debilitating stabbing pain several times a day, which makes him nauseous and unable to move. He also argues that the ALJ did not properly include factors such as his inability to concentrate or need for unscheduled breaks in his RFC. I agree for the reasons discussed above.

4.  The ALJ's hypothetical question

Finally, Cox argues that the ALJ's hypothetical questions did not capture all of the non-exertional limitations that are evidenced by Dr. Marsh and Cox's testimony. I agree. Since the ALJ did not give any indication of the weight given to Dr. Marsh's opinions as to the non-exertional limitations (such as concentration) and Cox's testimony regarding the stabbing pain and did not include them in the hypothetical questions to the VE, there is insufficient evidence to support the ALJ's determination that jobs exist in the economy that Cox could perform.

## Conclusion

For the reasons discussed above, I find that the Commissioner's determination that Cox is not disabled is not supported by substantial evidence in the record as a whole and is not based on correct legal standards. Accordingly, it is ORDERED that this case is REVERSED AND REMANDED to the Commissioner pursuant to 42 U.S.C. Section 405(g) for further proceedings consistent with this Order.

DATED at Denver, Colorado, on March 28, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge